UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| TRINA ZIMMERMAN as Executrix of the Estate of Thomas J. Zimmerman, Deceased, </br></br>     Plaintiff, </br></br>     v. </br></br> R&S TRUCKING, HAROLD GULLION, PINNACLE ENTERTAINMENT, INC., and BELTERRA RESORT INDIANA, LLC, d/b/a Belterra Casino Resort & Spa, </br></br>     Defendants. | ) ) ) ) ) ) ) ) CASE NO. 4:05-cv-0031-DFH-WGH ) ) ) ) ) ) ) ) |

ENTRY ON BELTERRA'S MOTION FOR SUMMARY JUDGMENT

On July 2, 2004, Thomas Zimmerman was killed when he drove a golf cart across a highway and was hit by a dump truck. His estate has sued the driver of the truck, his employer, and the owners of the casino that operated the golf course where he was playing. The casino owners have moved for summary judgment. As explained below, the casino owners' motion is granted. The undisputed facts show that no action or inaction on the casino's part was a proximate cause of Mr. Zimmerman's death.

*Summary Judgment Standard*

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita*

*Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment should be granted only where the pleadings, depositions, answers to interrogatories, affidavits, and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Only genuine disputes over material facts can prevent a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Id.*

When deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the nonmoving party. See Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 255; *Conley v. Village of Bedford Park*, 215 F.3d 703, 708 (7th Cir. 2000). Because "summary judgment is not a paper trial, the district court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). The court's only task is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.*

In negligence actions involving intervening cause issues, as this one does, questions of proximate cause are often for the jury to decide. Where it is clear that the injury was not foreseeable under the circumstances and that imposing

liability on the original negligent actor would not be justified, the court may determine proximate cause as a matter of law. *Carter v. Indianapolis Power & Light Co.*, 837 N.E.2d 509, 521 (Ind. App. 2005) (quoting *Arnold v. F.J. Hab, Inc.*, 745 N.E.2d 912, 917 (Ind. App. 2001), and affirming summary judgment for defendant where accident was caused by another party's negligence that defendant could not be expected to foresee); accord, *e.g., Suzik v. Sea-Land Corp.*, 89 F.3d 345, 349-50 (7th Cir. 1996) (applying Illinois law and affirming directed verdict based on absence of proximate cause; accident was not reasonably foreseeable to defendant); *Collins v. American Optometric Ass'n*, 693 F.2d 636, 639-40 (7th Cir. 1982) (applying Indiana law and affirming summary judgment on proximate cause issue).

*Undisputed Facts*

Plaintiff Trina Zimmerman is the widow of Thomas Zimmerman and the executrix of his estate. Defendant Harold L. Gullion drove the dump truck in the accident. Defendant R&S Trucking, Inc. employed Gullion. Pinnacle Entertainment, Inc. and Belterra Resort Indiana, LLC (collectively, Belterra) own and operate a riverboat casino on the banks of the Ohio River in Switzerland County, Indiana. The casino property includes an 18-hole golf course.

The Belterra resort property is located on both sides of Indiana State Road 156, which has a posted speed limit of 55 miles per hour through the Belterra property. The riverboat casino, hotel, and golf course clubhouse are all located

on the south side of the highway. The first, second, third, and eighteenth holes of the golf course are also on the south side of the highway. The other fourteen holes are on the north side of the highway. The golf course design includes a tunnel underneath the highway so that golf carts need not cross the highway traffic. Golf carts are not licensed for use on public highways.

Thomas Zimmerman was an experienced golfer who had played at the Belterra course for several years. Mr. Zimmerman organized annual outings at the Belterra course in 2002 and 2003, and again in 2004. On Thursday, July 1, 2004, Mr. Zimmerman and friends played 36 holes. On the morning of Friday, July 2nd, they played another 18 holes, and they were playing a second round in the afternoon. When Mr. Zimmerman and his friends were on the seventh hole, a rainstorm with lightning interrupted play. They returned to the clubhouse. They returned by taking a shortcut that left the cart paths and used the rough between fairways, and by crossing the highway at the "T" intersection formed where the clubhouse driveway meets the highway. They could have taken a longer route to the tunnel, but chose not to do so. The return to the clubhouse was uneventful.

After a rain delay of 30 to 45 minutes, the golf course management gave the golfers clearance to return to the course. Mr. Zimmerman and his playing partner Ed Schroeder got into their golf cart. Mr. Zimmerman was driving. Mr. Zimmerman and Jon Eckert, the driver of the other pair of golfers in the foursome,

chose not to return to the seventh hole by the longer tunnel route, which was the path designed for golf carts. Instead, they cut across the casino parking lot toward the highway. In doing so, they left the cart paths behind and passed at least one sign that said: "Golf Carts Are Not Permitted Beyond This Point." Eckert drove his cart up to the highway, looked for traffic, waited for a car to go by, and then drove across the highway. Mr. Zimmerman was driving his cart behind Eckert.

Half a mile east of the golf carts, Harold Gullion had just driven an empty dump truck owned by R&S Trucking onto Highway 156. He turned west toward the Belterra property, accelerating to reach highway speeds.

Mr. Zimmerman drove his cart up to the edge of the highway. He and passenger Schroeder looked left, at the eastbound traffic. Mr. Zimmerman said to Schroeder: "There's three cars on my side. After these three cars, it's clear over here." Mr. Zimmerman then pulled further forward, past a casino sign which, the court must assume for now, had limited their view toward the westbound traffic. The undisputed facts show that, after Mr. Zimmerman pulled forward, the sign did not block his and Schroeder's view of westbound traffic. Statement of Material Facts ("SMF") ¶ 37; Schroeder Dep. 27-28, 30-31.[1] Schroeder said loudly: "There's

---

[1] Plaintiff has attempted to dispute this point, citing Schroeder's deposition at pages 27-31 and 75, but the response does not raise a genuine issue of material fact. Schroeder's testimony is undisputed that Zimmerman pulled forward and stopped at a point from which both he and Schroeder actually saw
(continued...)

a truck coming on my side." Schroeder sat back so that Mr. Zimmerman could see. *It is undisputed that Mr. Zimmerman saw the truck.* SMF ¶ 38 (not disputed by plaintiff).

Mr. Zimmerman pressed the accelerator as hard as he could. The golf cart started a little slowly, but by the time the cart was in the roadway, it was moving as fast as it could go. SMF ¶ 39; Pl. Response ¶ 39; Schroeder Dep. 34. Schroeder was watching the truck. As the cart got to the middle of the roadway, he realized that the truck did not seem to be slowing down and was bearing down on them. Schroeder said: "I don't know if we're gonna make it," and he jumped from the cart just after it crossed the white line along the north edge of the highway traffic lanes. SMF ¶ 41; Schroeder Dep. 29. Right after Schroeder jumped from the cart, the dump truck hit the cart, killing Mr. Zimmerman. See Schroeder Dep. 34 ("heard the impact as I was trying to catch my balance").

The parties have debated the precise location of the impact, but with the Belterra's supplemental designation of material facts, they have agreed, at least for purposes of Belterra's motion for summary judgment, that the impact occurred ten feet, eight inches north of the white line on the north edge of the traffic lanes, though the impact still occurred within the wider highway right of way. See Def. Supp. Designation of Material Facts ¶¶ 66-69 (not disputed by plaintiff). There are

---

[1](...continued)
the approaching truck.

also factual disputes concerning the precise speed of the truck, whether and for how long it braked, and whether it stayed in the lane for westbound traffic. The parties seem to agree that the truck's braking left tire marks about 170 or 180 feet long before the point of impact.[2] Again, plaintiff is entitled to the benefit of the conflicts at this stage. The court assumes that the truck was traveling too fast, did not brake in time, and veered to the right (north) of the traffic lane, resulting in a collision with the Zimmerman golf cart to the north of the traffic lane.[3]

As a matter of Indiana law, a person driving a vehicle that is about to enter or cross a public highway from a private road or driveway "shall yield the right-of-way to all vehicles approaching on the highway." Ind. Code § 9-21-8-34. The police report on the accident noted as a "contributing circumstance" that Mr. Zimmerman had failed to yield the right of way, and it cited no other causes or

---

[2]State Police Sergeant Goris observed tire marks showing that the truck braked about 180 feet before the point of impact. Pl. Ex. 31 at 5 (truck traveled 370 feet from point of braking until it came to rest, 190 feet beyond point of impact); Def. Ex. 19 at 4-6 (accident reconstruction report for Belterra agreed with and relied on Sgt. Goris's measurements). Plaintiff has not offered contrary expert authority on this point. Eyewitnesses who testified that the truck did not seem to brake do not raise a *genuine* issue of fact in the face of these observations and measurements by Sgt. Goris.

[3]The driver of the truck, Harold Gullion, said he braked, skidded and swerved to the right as he was trying to avoid a head-on collision with eastbound traffic, while also trying to avoid the golf cart. Gullion testified that he was still accelerating in seventh gear, going between 50 and 55 miles per hour, when he saw Zimmerman stop, look both ways, and start crossing the highway. Gullion Dep. 45-47. Gullion testified that he immediately hit the brakes, which locked, causing him to skid and to slide to the right. *Id.* On summary judgment, however, the court does not rely on this testimony or attempt to resolve disputed issues of fact.

contributing circumstances. Pl. Ex. 31 at 1. Additional facts are noted below, keeping in mind the standard that applies to a motion for summary judgment.

*Discussion*

Plaintiff's theory against Belterra is that Belterra had a duty toward business invitees such as golfers to prevent or to discourage them more strongly from driving their golf carts across the highway, that Belterra breached that duty, and that the breach was a proximate cause of Mr. Zimmerman's death. Belterra's motion for summary judgment challenges each element of the theory, but the most persuasive and decisive one is proximate cause.

Plaintiff's theory is that Belterra was required either (a) to make it physically impossible for golfers to drive their golf carts across the highway at the driveway intersection (though it is an entrance to property and it must be open to traffic passing, leaving, or entering the casino property), or (b) to warn golfers more effectively, such as by posting more prominent signs at the highway telling golfers not to cross there in the carts (though the undisputed facts show that there were signs telling golfers not to take carts even into the parking lot, let alone up the driveway to the highway).

Regardless of whether Mr. Zimmerman should have been trying to drive the golf cart across the road under any circumstances, the undisputed facts show that Mr. Zimmerman pulled up to the highway, stopped, looked for traffic, and saw the

approaching dump truck. He was required to yield the right of way to the traffic on the highway. He pulled out in front of the truck under circumstances (relative speeds and distances) that caused the truck's driver to apply brakes hard enough to leave marks on the wet roadway. Even if the court assumes that the Belterra breached its duty of care, notwithstanding the course design that used a tunnel to cross under the highway and signs and other design features to indicate where golf carts should and should not go, Mr. Zimmerman's intervening decision to pull out across the road after seeing the approaching dump truck breaks the chain of proximate causation.

Issues of proximate cause often present questions of degree that must be decided by juries, but where the facts are sufficiently clear and one-sided, the issues can be decided as a matter of law. For example, in *Miller v. Faulkner*, 506 N.E.2d 52 (Ind. App. 1987), the court affirmed summary judgment in favor of the defendant driver of a tractor-trailer. The accident occurred when a pickup truck, in which plaintiff was a passenger, turned in front of the tractor-trailer. The undisputed facts showed that the tractor-trailer was clearly visible and that the pickup truck turned into its path when it was four or five car lengths from the intersection, as its driver tried to "beat" the tractor-trailer. The appellate court affirmed the trial court's summary judgment because the proximate cause of the accident was the pickup driver's negligent act of turning into the path of the tractor-trailer. 506 N.E.2d at 56.

Similarly, in *Bush v. Northern Indiana Public Service Co.*, 685 N.E.2d 174 (Ind. App. 1997), the plaintiff was a passenger in a car that was being driven recklessly, about 45 miles per hour in a 20 mile per hour curve. The car left the road and struck a utility pole. The Court of Appeals affirmed summary judgment for the utility company. The court recognized that the utility company might reasonably be expected to foresee that a car would leave the road and collide with a utility pole in some circumstances, such as when a utility pole is located at a sharp curve, where several prior accidents have occurred, or where the pole is located on an island in the middle of a dangerous intersection. 685 N.E.2d at 177-78. The court reasoned, though, that the utility company was required to anticipate only ordinary and normal use of the highway. *Id.* at 178. The undisputed facts showed illegal and reckless conduct by the driver that the utility company was not required to anticipate. *Id.*

Likewise, in *Carter v. Indianapolis Power & Light Co.*, 837 N.E.2d 509 (Ind. App. 2005), the Court of Appeals affirmed summary judgment for a utility company where the plaintiff's decedent had been killed when the car he was riding left the roadway and struck a utility pole. The car had been going 80 miles per hour in a 40 miles per hour zone, as three teenagers were "jumping" the hills. The Court of Appeals held that the driver's negligence was not reasonably foreseeable, so that it amounted to an intervening cause breaking the chain of proximate causation. 837 N.E.2d at 521.

Of course, from one perspective, a person can foresee that some pickup drivers will try to "beat" approaching tractor-trailers, that some drivers will try to drive much too fast on a curve, and that some drivers will play the dangerous game of "jumping hills" at high speed. The Court of Appeals in *Carter* explained:

> Whether an act is the proximate cause of an injury, depends upon whether the injury was a natural and probable consequence of the negligent act which, in light of the attending circumstances, could have been reasonably foreseen or anticipated. The negligent act must set in motion the chain of circumstances which contribute to or cause the resulting injury. However, the chain of causation may be broken if an independent agency intervenes between the defendant's negligence and the resulting injury. The key to determining whether an intervening agency has broken the original chain of causation is to decide whether, under the circumstances, it was reasonably foreseeable that the agency would intervene in such a way as to cause the resulting injury. If the intervening cause was not reasonably foreseeable, the original negligent actor is relieved of any and all liability resulting from the original negligent act. The policy underlying proximate cause is that we, as a society, only assign legal responsibility to those actors whose acts are closely connected to the resulting injuries, such that imposition of liability is justified. Although the issue of proximate cause is often determined by the trier of fact, where it is clear that the injury was not foreseeable under the circumstances and that the imposition of liability upon the original negligent actor would not be justified, the determination of proximate cause may be made as a matter of law.

837 N.E.2d at 520-21, quoting *Arnold v. F.J. Hab, Inc.*, 745 N.E.2d 912, 917 (Ind. App. 2001). In light of these policy judgments embodied in Indiana law, courts treat the foreseeable forms of negligence described above as negligence that others are not required to foresee and to prevent or mitigate, upon the threat of payment of damages for injuries resulting much more directly from the negligence of others.

If the question here were simply whether Belterra should have foreseen that some golfers might try to cross the highway rather than use the tunnel, the court would give plaintiff the benefit of conflicting inferences and answer yes. But under Indiana law, the proximate cause analysis is more specific. The analysis of the foreseeability element of proximate cause focuses on the facts of the actual occurrence, rather than the more general analysis that applies when courts decide whether the defendant owed a legal duty to the plaintiff. *Goldsberry v. Grubbs*, 672 N.E.2d 475, 479 (Ind. App. 1996 ) (reversing finding on summary judgment that utility owed no duty to motorist hurt when his car left highway and struck utility pole, and distinguishing between foreseeability analysis for purposes of deciding existence of duty and for purposes of proximate cause). The issue in evaluating proximate cause is "whether, under the circumstances, it was reasonably foreseeable that the agency would intervene in such a way as to cause the resulting injury." *Carter*, 837 N.E.2d at 521, quoting *Arnold*, 745 N.E.2d at 917. The question is whether Belterra should have foreseen that a golfer trying to cross the highway would stop, see a truck coming toward him, and then pull out in front of the truck when it was too close. Under the reasoning of *Carter*, *Bush*, and *Miller*, the answer is no.[4]

---

[4]*Goldsberry* reversed summary judgment for a defendant utility company in an accident that occurred when a car in which the plaintiff was riding left the roadway and struck a pole. The driver was intoxicated and fell asleep. The reversal might appear superficially to support plaintiff here. For purposes of this case, however, the critical feature of *Goldsberry* is that the majority addressed only whether the utility company owed any duty at all to motorists, not whether any alleged breach of the duty might have been a proximate cause of the plaintiff's injuries. 672 N.E.2d at 479-81. The majority expressly declined to address the
(continued...)

Plaintiff relies on *Lutheran Hospital of Indiana, Inc. v. Blaser*, 634 N.E.2d 864 (Ind. App. 1994), in which the Court of Appeals upheld a jury verdict against a hospital and in favor of a plaintiff injured by a hit-and-run driver while she was crossing a driveway at a hospital parking lot. The hospital argued that the actions of the hit-and-run driver, who entered the parking lot in an exit lane, were an intervening cause that should have broken the chain of proximate causation. The Court of Appeals rejected the argument. The parking lot was across the street from the hospital. The evidence showed that pedestrians crossed the street in mid-block and used the driveway to walk into the parking lot each day. *Id.* at 870. The evidence also showed that cars used the marked exit to enter the parking lot several times every day. "The occurrence was in the ordinary and normal course of events, an incident to the ordinary operation of an automobile, and thus, not governed by the holding of *Fawley*." *Id.* Because the accident that occurred was in the ordinary and normal course of events, and was thus foreseeable, the court upheld the verdict against the hospital based on its failure to provide adequate warnings or safeguards.[5]

---

[4](...continued)
issue of proximate cause, where the standard was much more demanding, because the utility company had not raised that issue in its motion for summary judgment. *Id.* at 481.

[5]There are also important factual differences between *Lutheran Hospital* and this case. The plaintiff in *Lutheran Hospital* was struck from behind. 634 N.E.2d at 869. There was no evidence that she saw the car before it struck her. Also, the car that struck her did not have the right of way; it was entering the parking lot through a lane marked as the exit. In other words, the plaintiff in *Lutheran Hospital* did not see an approaching vehicle with the right of way and decide to proceed in front of its path, as the undisputed facts show Mr. Zimmerman did in this case.

The *Lutheran Hospital* court distinguished *Fawley v. Martin's Supermarket*, 618 N.E.2d 10 (Ind. App. 1993), in which a drunk driver struck and injured customers of a supermarket in the parking lot and on the sidewalk. The Court of Appeals affirmed summary judgment for the supermarket because the drunk driver's actions were an intervening cause. The issue here is one of degree, as was evident in *Fawley*:

> In a sense all such occurrences are foreseeable. They are not, however, incidents to ordinary operation of vehicles, and do not happen in the ordinary and normal course of events. When they happen, the consequences resulting therefrom are matters of chance and speculation. If as a matter of law such occurrences are held to be foreseeable and therefore to be guarded against, there would be no limitation on the duty owed by owners of establishments into which people are invited to enter. Such occurrences fall within the category of the unusual or extraordinary, and are therefore unforeseeable in contemplation of the law.

*Fawley*, 618 N.E.2d at 13-14, quoting *Schatz v. 7-Eleven, Inc.*, 128 So.2d 901, 904 (Fla. App. 1961).

The undisputed facts here show that the Zimmerman accident did not occur "in the ordinary and normal course of events," so the reasoning of *Lutheran Hospital* does not apply here. The evidence submitted on summary judgment indicates that golfers rarely crossed the highway in their golf carts. There was no evidence of prior accidents or close calls. The Belterra employees who worked on the golf course had seen golfers cross the highway only a few times. The head of golf operations had seen that occur six to twelve times in three years. Duggan Dep. at 16. The golf professional knew of golfers crossing the highway fewer than

a dozen times in three years. Newton Dep. at 15-16. The golf maintenance manager had seen golfers cross the highway a couple of times per year. Miller Dep. 22. Approximately 25,000 to 30,000 individual rounds of golf are played at the Belterra course each year. *Id.* at 34.

On this point, plaintiff has come forward with evidence from Helen Hounshell, who was riding in an eastbound car and who saw the Zimmerman accident. She lived nearby and had often driven past the casino property. She testified initially that she had seen golfers going back and forth across the roadway "many times." Hounshell Dep. 16. On cross-examination, however, she was asked how many times she had seen a golf cart actually cross the road, and she responded "not often." *Id.* at 28. She repeated that answer twice more. Plaintiff also relies on the testimony of Belinda Wallace, a Belterra employee who testified that golfers ("customers") would cross the highway "every day." Wallace Dep. 21. When asked how she knew that, she said "we were told, or we'd see them, or someone would call us and tell us." But when she was asked whether she had actually seen customers drive across the highway, though, she said no. *Id.* at 17.

Neither of these witnesses presents a genuine issue of material fact. Wallace was testifying to second-hand knowledge, and her testimony on this point is inadmissible hearsay. Hounshell's vacillation between "many times" and "not often" provides no more than a proverbial "scintilla" of evidence that is not enough

to allow a reasonable jury to find that Mr. Zimmerman's actions fell within "the ordinary and normal course of events," so that Belterra might be held liable (at least in part) for Mr. Zimmerman's death.[6]

Plaintiff has also tried to raise an issue of fact concerning whether a casino sign on the south side of the highway blocked or limited Zimmerman's line of sight and his ability to judge its speed and distance. The undisputed evidence shows that Mr. Zimmerman stopped, checked traffic to the left, then pulled forward further, beyond the sign, and that he in fact saw the approaching dump truck before he decided to accelerate across the highway. Under those circumstances, it was Mr. Zimmerman's responsibility to yield the right of way and to observe the truck so that he could gauge its speed and distance before crossing in its path.

Plaintiff's expert H. Richard Hicks acknowledged that the placement of the sign did not violate Indiana's sight distance requirements as measured from the point designated by the Indiana Department of Transportation. Hicks Dep. 30-31, 37-38. Hicks also acknowledged the undisputed fact that Mr. Zimmerman saw the truck. *Id.* at 58-59. Under those circumstances, where the dump truck had the right of way, Mr. Zimmerman — or the driver of any other vehicle in that situation — is responsible for watching the truck so as to judge its speed and

---

[6]Plaintiff has also offered evidence that golf course maintenance vehicles crossed the highway at the intersection on a daily basis. There is no evidence that Mr. Zimmerman was aware of the practice, however, and the golf course's relationship with its employees was completely different from its relationship with golfers.

distance before trying to cross in front of it. Once Mr. Zimmerman stopped and actually saw the approaching truck, any earlier limits on his sight distance became immaterial.

Because the undisputed facts show that no actions or inactions by Belterra were a proximate cause of Mr. Zimmerman's death, the court does not reach Belterra's additional arguments for summary judgment, which were: (a) the fact that the point of impact was in the highway right of way, not on Belterra's property, should have relieved Belterra of any duty toward Mr. Zimmerman; (b) the combination of the golf course design and warning signs regarding use of golf carts satisfied any duty Belterra might have had to discourage golfers from trying to cross the highway; and (c) Mr. Zimmerman incurred the risk of dangers inherent in the operation of a golf cart.

For the foregoing reasons, the court grants Belterra's motion for summary judgment. No separate judgment shall be entered at this time. Trial on plaintiff's claims against Gullion and R&S Trucking remains scheduled for September 11, 2006.

So ordered.

Date: August 11, 2006

DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

-18-

Copies to:

Robert Ballard Clemens
BOSE MCKINNEY & EVANS, LLP
rclemens@boselaw.com

Wilmer E. Goering II
ECKERT ALCORN GOERING & SAGE
goering@eaglaw.com

Steven D. Groth
BOSE MCKINNEY & EVANS
sgroth@boselaw.com

Heidi Kendall-Sage
ECKERT ALCORN GOERING & SAGE
sage@eaglaw.com

Christopher G. Stevenson
WILSON KEHOE & WININGHAM
cstevenson@wkw.com

William E. Winingham
WILSON KEHOE & WININGHAM
winingham@wkw.com